THE CITY OF CLEBURNE V. THE GULF, COLORDO & SANTA FE RY.

(Case No. 5865.)

1. CITIES AND TOWNS—RAILROAD COMPANIES—APPROPRIATIONS—CONSTITUTION, ART. 11, SEC. 3, CONSTRUED—The terms of sec. 3, art. 11, of the Constitution, are broad enough to prohibit a city or town from appropriating its revenues or using its credit to obtain right of way and depot grounds for a railway company; and the section is not modified in this particular by sec. 9, art. 10.

2. SAME—CONSTITUTION, ART. 10, SEC. 9, CONSTRUED—Sec. 9, art 10 of the Constitution *does not make it the duty of the town to make the grant of right of way and depot grounds*.   The town can exercise its authority in all cases in which the right of way is over a street, and the land for depot purposes is owned by the town, without incurring any debt.   The citizens may act if the town cannot or will not.

3. SAME—IMPLIED POWER—A power will be implied only when, without its exercise, an express duty or authority would be nugatory.   (Cooley on Con. Lim., 285 *et seq.*)

4. SAME—An agreement of a city to refund the money paid out by a railway company for right of way and depot grounds, contemplates an appropriation prohibited by sec. 3, art. 11.

5. SAME—EXEMPTION FROM TAXATION—It is by no means certain that, under art. 436, R. S., a city can exempt from taxation the general property of a railway company.   See facts for ordinance held not to create such exemption.

APPEAL from Johnson.   Tried below before the Hon. J. M. Hall.

On July 6, A. D. 1885, the appellee, the Gulf, Colorado and Santa Fe Railway Company instituted this suit in the district court of Johnson county, Texas, against appellant, the city of Cleburne, and the mayor and aldermen and tax collector of appellant, for debt on certain warrants or scrip, and for injunction.   On the trial, the appellee abandoned its suit against all of the defendants except the appellant, and abandoned all of the allegations except those, which in substance, were as follows :   That appellee was an incorporated company, duly and legally incorporated under and by the laws of the state of Texas. That pursuant to and in accordance with its charter as a railroad com pany, it laid off and constructed its railway through the county of Johnson, state of Texas, and was induced to build its railroad through the corporate limits of the city of Cleburne, by reason of the fact that the mayor and aldermen promised and undertook to furnish to appellee the right of way through the city, and sufficient grounds for depot purposes, on condition that it would construct its railway through the corporate limits; that appellant, through its mayor and board of aldermen, in order to comply with its contract, borrowed from appellee the sum of $1,695.25, representing to appellee that it did not have money sufficient to purchase the right of way and depot grounds as it had contracted to do, and represented to appellee that the amount necessary to complete the contract was the sum of $1,695.25; that all and every part of that sum was by appellee invested in the purchase of right of way and depot grounds.   That appellant on September 17, 1881, did, by ordinance of that date, admit its indebtedness to appellee in the sum of $1,695.25, and undertook to pay the same, and instructed its mayor and secretary to issue to appellee its interest-bearing scrip for $1,695.25, to be non-transferable, and to be receivable in payment of all taxes due or to become due appellant by appellee.   And that W. N. Hodge, mayor, and H. W. Patton, secretary of appellant, on September 17, A. D. 1881, did issue and deliver to appellee its scrip bearing eight per cent. interest from date until paid, for $1,695.25, the form and tenor of each piece of scrip being:

"Cleburne, Texas, September 17, 1881.

The Treasurer of the city of Cleburne :—Pay to the Gulf, Colorado and Santa Fe Railway company fifty dollars.   This warrant to bear eight per cent. interest from date until paid, to be non-transferable, and to be received by the city only in payment of taxes due said city from said Railway company.

No. —.                  [Signed]                  W. N. HODGE, Mayor.
Attest H. W. Patton, Secretary."

That of these warrants thirty-four were issued by the mayor and secretary on the terms above set out, and that they were numbered consecutively from one to thirty-four, and each for the sum of $50 except warrant No. 6, which was for the sum of $45.25. That the tax collector and assessor refused to receive the warrants for taxes, and had levied upon and advertised for sale the depot grounds, etc. There was a prayer for injunction, restraining the collection of taxes and sale of the property, and for judgment for the amount due on the warrants after deducting taxes. Appellant pleaded general denial among other things. The cause was tried by the court on January 13, 1886, and judgment given in favor of plaintiff for the sum due on the warrants, that sum to be a valid and subsisting claim against defendant until it became due and payable from plaintiff in the form of taxes. The injunction was also granted.

The ordinance referred to was as follows :

" *Be it ordained by the City Council of the City of Cleburne.*

Section 1. That the city of Cleburne hereby admits its indebtedness to the Gulf, Colorado and Santa Fe Railway company for the amount of its payments to obtain its depot grounds therein in the sum of $1,695.25, with interest at eight per cent. from this date until paid.

Sec. 2. All municipal taxes that may hereafter lawfully become due to said city of Cleburne on the taxable property of the Gulf, Colorado and Santa Fe Railway company, situated within the corporate limits of said city, may be applied and paid by said company on account of the amount due it by this city, and all said taxes shall be allowed and credited by this city on the amount so due the company from year to year until the full payment thereof.

Sec. 3. The city of Cleburne acknowledges the amount so due the company to be a trust fund and debt to it by the city against which no statute of limitation will and shall run until payment thereof.

Sec. 4. That the mayor and secretary of this city be and hereby are authorized and directed to issue to the company interest bearing scrip for the amount hereby acknowledged to be due the company."

This ordinance was afterwards repealed.

*English & Ewing* and *S. C. Padelford*, for appellant, on the construction of Art. 10, sec. 9, Con., cited: R. S., Arts. 375, 4173; Act of March 27, 1885, ch. 58, 60; Hackettstown *v.* Swackhamer, 37 N. J. Law Jour., 191.

On the constitutionality of the ordinance, they cited: Const. of Texas, Art. 11, sec. 3; Art. 16, sec. 6; Hetfield *v.* Trustees, etc., 70 N.

Y., 28–33; Attorney General *v.* Bay Co., 34 Mich., 46; Clark *v.* Des Moines, 19 Ia., 208; The People *v.* Salem, 20 Mich., 470; 23 Mich., 499.

*Tillman Smith* and *Ballinger, Mott & Terry,* for appellee.

ROBERTSON, ASSOCIATE JUSTICE.—Sec. 3 of Art. 11, of the Constitution, prohibits municipal corporations from making appropriations or donations, or loans of its credit to private corporations. The object of this provision was to deprive municipalities of the power possessed by them under the constitution of 1869, in the exercise of which many counties and towns in the state assumed burdens, not yet discharged, in anticipation of benefits never realized. The increase in population and values expected from railway connection in many instances never came; and the tax, not lightened from these sources, depressed values, prevented immigration, and became a curse to the localities which had invited it as a blessing. In localities in which the delusion had not been dissipated by experience, the people were still stimulated by false hopes and fraudulent assurances to make extravagant donations to coveted railroads. While the power lasted, corporate greed found local pride and ambition an open way to municipal revenues.

The scheme was generally consummated by a contract by which the railway company bound itself to construct its line through a county, or in a given distance of a town, in consideration of so many thousand dollars of negotiable bonds of the county or town. This section deprived municipalities of the power to make such contracts. Its terms are broad enough to prohibit a city or town in its corporate capacity from appropriating its revenues or using its credit to obtain right of way and depot grounds for a railway company, and the section must be given this effect, unless it is modified in this particular by Section 9 of Art. 10 of the constitution.

That Section (9) requires railway companies projecting a road within three miles of a county seat, to run through the county seat, if not prevented by natural obstacles: "provided such town or its citizens shall grant the right of way through its limits and sufficient ground for ordinary depot purposes." The duty of the railway company is the same, whether the grant is made by the town or by its citizens. The power of the citizens to contract is not limited. They may grant the right of way and depot grounds from lands already owned by them, or they may purchase the needed lands for cash or on credit, and make the grant, and thus secure the road.

Before they can make the grant they must acquire the subject of it, but there is no restriction upon their power to make the necessary

acquisition.    It is not made the duty of the town to make the grant, the duty would imply all the powers necessary to its proper execution, but the grant is authorized to be made by the town or its citizens.    It is contemplated that the town cannot or will not exercise its authority in some instances.    It can exercise it in all cases in which the right of way is over a street and the land for depot purposes is owned by the town, without incurring any debt.    The grant of right of way over the street would be subject to the right of abutting proprietors to recover damages caused by the new servitude.    Railway Company v. Eddins, 60 Tex., 656.

But the grant by the city would pass the right of way.    The citizens may act if the city cannot or will not.    The power to borrow money and buy the land in order to make the grant, is not expressly conferred; if it exists it must be implied from the mere permission to make the grant, which can be made in certain contingencies without the power, and which the citizens may make without the aid of the city if the city either cannot or will not act.    Section 3 (Art. 11) forbids a city to make either a donation or appropriation for the benefit of a railway company.    Section 9 (Art. 10) authorizes a donation in the special case mentioned in the proviso, but neither expressly nor by necessary implication authorizes an appropriation in any case.

A power will be implied only when without its exercise an expressed duty or authority would be nugatory.    Cooley on Const. Lim., 235, *et seq.* and notes.

Municipal powers are strictly construed in the United States (*Id.*) and the entire article in the constitution of 1875, on municipalities inditates a determination to impose new limitations on the powers of cities, towns and counties.    From the authority conferred in one section to make a grant, the power to acquire the subject of the grant in flat violation of another section, when the grant is compulsory in no case, is possible in some cases without the power, and may be made by the citizens when the city does not own the subject, cannot be fairly implied.    The agreement of the city of Cleburne to purchase for the railway company right of way and depot grounds, or to refund the money paid out for this purpose by the railway company, contemplates an appropriation for the benefit of the railway company prohibited by section 3 of Art. 11 of the constitution.    The ordinance authorizing the scrip in controversy and the scrip issued is void.    It was not the purpose of the city to exempt the railway company from taxation under Art. 436, Revised Statutes.    If the ordinance authorizing this scrip could have such effect, its repeal revoked the exemption. It is not certain, by any means, that, under Art. 436 a city could

exempt from taxation the general property of the railway company. At all events, such was not the purpose of any ordinance in this record.

The judgment below, affirming the validity of the city ordinance of September 17, 1881, and of the scrip issued under it, and enforcing the terms of both as a contract binding on the city of Cleburne must be reversed, and, as the case was tried by the court without a jury, a general judgment for the defendant below will be here rendered.

It is so ordered.

[Opinion delivered June 18, 1886.]