**CITY OF TEAGUE v. SHEFFIELD et al.**

No. 900.

Court of Civil Appeals of Texas. Waco.

March 6, 1930.

Rehearing Denied April 10, 1930.

A. B. Geppert, of Teague, for appellant.

C. H. Machen, of Mexia, and L. W. Shepperd, of Groesbeck, for appellees.

GALLAGHER, C. J.

This suit was instituted by appellees, J. R. Sheffield and Horace Sheffield, against the city of Teague, a municipal corporation duly incorporated under the general laws of this state, to recover damages for the breach of a contract to furnish water to appellees. The contract sued on was dated July 29, 1918. The city at that time owned and operated a system of waterworks for the purpose of supplying the municipality and the inhabitants thereof with water. The principal source of its water supply was shallow wells situated on a certain two-acre tract of land owned by it and located about 3½ miles from the corporate limits. Appellant maintained a pumping plant thereon, from which the water from said wells was forced through a large wooden main to the city for distribution. Fuel for operating the engines at said plant had to be hauled thereto from the city. The road

over which such fuel had to be hauled was in bad condition and at times almost but not actually impassable for loaded wagons or trucks. The purpose of the contract for the breach of which damages were so claimed was to secure a better roadway, put the same in condition for hauling thereon, and·have the same ultimately accepted by the county as a public road. The salient provisions of said contract are as follows: (a) Appellees were to furnish a roadway over their respective lands, which seemed to have been contiguous to appellant's said two-acre tract on which its wells and pumping plant were located; (b) they were to furnish a certain number of men to help put the new road in condition for travel; (c) they were to deed the land occupied by said road to Freestone county for the purpose of making the same public and permanent; (d) they were to pay at the rate of 25 cents per thousand gallons for all water used by them in excess of the amount which the city agreed in said contract to furnish them without charge, as hereinafter shown; (e) appellant was to furnish men and machinery to help put said road in condition for travel; (f) it was to furnish appellees 78,000 gallons of water annually without charge. Said contract was to be in full force and effect from its date and as long thereafter as said road should remain open. The beginning and ending points of said road were designated in the contract, but the width thereof was nowhere specified. The testimony introduced does not disclose definitely the width nor the length of said road. Neither does it disclose the aggregate acreage included therein. Said contract is silent as to how or where the water which appellant agreed to furnish appellees should be delivered to them. The testimony shows that appellees tapped appellant's water main leading from its plant to the city and piped the water therefrom to various points in their respective stock pastures. They then abandoned the means previously used by them for securing and storing stock water.

Appellees complied with all their obligations under said contract except the execution and delivery of a deed conveying the land embraced in said roadway to the county, but they offered in their pleadings to execute such deed. Appellant complied with its agreement to furnish water to appellees as long as it maintained its water plant on said tract, which was a period of approximately ten years. Whether water used by appellees during said time was measured by meter is not shown. Neither is it shown whether they ever used or paid for any additional water at the rate provided in said contract during that time. Appellant found its water supply from said plant inadequate, and it deemed it necessary to abandon the same and discontinue its operation. The propriety of such action and the necessity therefor are not controverted. Appellant developed a water supply in or near the city and installed a pumping station there. As soon as the new plant was put in successful operation, appellant ceased operating the pumps at its old plant, and water ceased to flow into and through the pipes of appellees. One of the reasons for abandoning the old water plant was that the large wooden main leading therefrom to the city had worn out, and, notwithstanding constant repairs, permitted the continued escape of water therefrom. On account of the condition of said main, it was impractical for. appellant to pump water from its new plant through the same to the place where the pipes owned and used by appellees tapped the same. The testimony showed that the laying of a two-inch iron pipe from the city to connect with appellees' pipes would be necessary to enable the city to continue to deliver water into and through appellees' said pipes, and that the cost of the same would be approximately $3,600.

The case was submitted to a jury on two special issues, in response to which the jury answered that appellees suffered damages by the failure of appellant to continue to supply them with water in the sum of $4,550. The court rendered judgment on said verdict in favor of appellees against appellant for said sum.

### Opinion.

Appellant, by a group of propositions, contends that the provisions of said contract transcend the lawful powers vested in appellant as a municipal corporation, and that such contract is therefore invalid, unenforceable, and insufficient to support a recovery of damages for the breach thereof. The extent of the power to contract possessed by a municipal corporation in this state is aptly expressed by our Supreme Court in the case of Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104, 1105, 1106, pars. 3 to 5, inclusive, as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident, to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is.denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the

powers granted are void. 1 Dillon on Municipal Corporations (5th Ed.) § 237; 28 Cyc. p. 1533; 19 R. C. L. § 75; City of Brenham v. Brenham Water Co., 67 Tex. 542, 553, 554, 4 S. W. 143; Citizens' Bank v. City of Terrell, 78 Tex. 456, 14 S. W. 1003."

When the contract under consideration was entered into by appellant, a municipal corporation, incorporated like it under general law, was authorized to provide water for fire protection and the convenience of its inhabitants. R. S. 1911, art. 865. Such a corporation was further authorized to purchase, construct, and operate water systems inside or outside the corporate limits and to regulate and control the same in such manner as to best protect its interests. R. S. 1911, art. 770. To this end such corporations were given power to own land for such purposes inside or outside the corporate limits, to sell water to persons or corporations outside of such limits, to prescribe the kind of mains to be used within or beyond such limits, and to require them to be kept in good condition. R. S. 1911, arts. 769 to 772, inclusive. Shortly prior to the execution of this contract, such a city owning its own waterworks system was by an amendatory addition to the statutes authorized to condemn private property in or outside such city for right of way for digging or excavating canals and laying mains and pipe lines for conducting water into such city for the use of the public. Vernon's Ann. Civ. St. Supp. 1918, art. 768a.

■ The contract under consideration did not involve merely the acquisition by appellant of an easement or right of way to afford access to its plant or ingress or egress to and from the same. Appellant at the time had access to its plant over a public road already established. While the use of the same was attended with some inconvenience, such use was neither impossible nor impracticable. Said contract involved in fact the opening and improvement of a new road or highway, which was by the express terms thereof to be deeded to the county for the declared purpose of making the same a permanent public road. Such purpose was promptly effectuated; such road made public and incorporated as a section of a rural mail route. Said contract did not provide for the exercise by appellant of any manner of control over said road after the same was prepared for travel as provided therein. The rights and benefits secured by appellant by virtue of said contract were such only as were enjoyed in common with the general public traveling in that part of the county. The money spent by appellant in improving such road and the water furnished and to be thereafter furnished by appellant to appellees as long as said road should remain open were in effect a bonus or donation for such purpose. No such authority was expressly conferred by any of the articles of the Revised Statutes above cited. Nor do we think any such authority could have been reasonably implied therefrom or held indispensable to the maintenance of appellant's water plant. Whether a legislative grant of such power to a municipal corporation is inhibited by section 3 of article 11 or section 52 of article 3 of our State Constitution need not be determined. See, however, in this connection, City of Sweetwater v. Hammer (Tex. Civ. App.) 259 S. W. 191, 195, 196; City of Cleburne v. Brown, 73 Tex. 443, 446, 11 S. W. 404; City of Cleburne v. G., C. & S. F. Ry., 66 Tex. 457, 460, 461, 1 S. W. 342.

■■ Said contract is silent as to how or where the stipulated water was to be delivered or made available to appellees. We may assume that the parties at the time considered that the location of appellant's water plant was permanent and that such water could be secured by appellees by tapping appellant's main at that point, as they did do. Appellant did not attempt to bind itself in terms to maintain a water plant at that place so long as said road should remain open. Such an agreement would have been in effect that such maintenance should continue indefinitely or forever, at the pleasure of the county or traveling public, regardless of the fact that the interests of appellant as a city and the interests of its inhabitants might render it either expedient or possibly necessary to abandon the same. As said, in substance, by Chief Justice Conner in City of Fort Worth v. First Baptist Church (Tex. Civ. App.) 268 S. W. 1016, 1022, a municipal corporation has no power to cede away or embarrass the exercise of its legislative or governmental powers or functions by contracts with others so as to disable it from the performance of its public duties or from controlling in the future as it may deem best its municipal affairs, and, when a contract is made by such corporation which is not warranted by the statutory authority conferred upon it, the governing body of such city has at all times the right to declare it void and to refuse compliance therewith. See, also, Waterbury v. City of Laredo, 68 Tex. 565, 5 S. W. 81, 84; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143, 150; Bowers v. City of Taylor (Tex. Com. App.) 16 S.W.(2d) 520, 521, 522.

Appellant did not in terms agree to furnish to appellees the stipulated water at its plant or at the point where they tapped its main. To comply with such an agreement after the abandonment of said plant and the collapse of its old main would have required appellant to lay a new and adequate main from its corporate limits to such point at an expense, according to the testimony, of approximately $3,600. Prior to the enactment of chapter 88, General Laws of Texas 1909,

**420**

afterwards articles 769 to 772, inclusive, of the Revised Statutes of 1911, it was held in City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459, 461, 462 (writ refused), that a city incorporated like appellant under general law, had no authority and could not bind itself by contract to furnish one not an inhabitant thereof with water for use outside its corporate limits. After the passage of said act, the provisions thereof authorizing the sale of water to persons or corporations outside city limits were before the court for construction in City of Sweetwater v. Hamner, supra, pages 193–196 of 259 S. W. and it was there held that such provision did not authorize a city to extend its own mains for the purpose of furnishing water to persons residing and using the same outside its limits.

Appellant was without lawful authority, either express or implied, to bind itself to maintain a water plant continuously and indefinitely at said point, or to bind itself to lay or maintain a water main from its corporate limits to such point. Without one or the other of such acts, it could not continue to deliver the stipulated water into appellees' pipes at the original point of reception. For these additional reasons, we think the contract relied upon by appellees was invalid and insufficient to support a recovery of damages by them for the breach thereof. In this connection we quote from City of Paris v. Sturgeon, supra, page 461 of 110 S. W. (50 Tex. Civ. App. 519), as follows: "And as a general rule it may be said that a person dealing with such a corporation and assuming that it has a power it does not possess will not be protected because he may have performed his part of the undertaking. He is bound to know the extent of its powers, and if it fails to comply with an engagement to him which it had no power to make he cannot complain. Cooley's Const. Lim. pp. 191–196, 213; 3 Abbott's Mun. Corp. §§ 890, 971; 4 Abbott's Mun. Corp. § 971; 1 Abbott's Mun. Corp. § 249; Pye v. Peterson, 45 Tex. 314, 23 Am. Rep. 608; Davis v. Burney, 58 Tex. 367; Cleburne v. Railway Co., 66 Tex. 461, 1 S. W. 342; Waterbury v. Laredo, 60 Tex. 519."

The rule so announced applies, however, only to an action founded on such an unauthorized contract. The right of appellees to recover upon an implied contract for the benefits, if any, conferred by them on appellant, as discussed in Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841 et seq., is not before us. The cause of action asserted by them is based solely on the express written contract.

The judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing by their suit and that appellant go hence without day.