JAMES E. FERGUSON v. D. W. WILCOX, CHAIRMAN OF STATE DEMOCRATIC EXECUTION COMMITTEE, ET AL.

No. 5675.   Decided May 23, 1930.
(28 S. W., 2d Series, 526.)

*Bailey, Nickels & Bailey and Ocie Speer,* for relator.

*W. A. Keeling, J. H. Hart, R. T. Lipscomb, A. S. Johnson* and *C. C. Renfro,* for respondents.

Mr. Chief Justice BRITAIN delivered the opinion of the court.

James E. Ferguson, relator, filed an original petition for mandamus in this Court to compel and require D. W. Wilcox, Chairman, and the other officers and members of the State Democratic Executive Committee of Texas, to certify to each of the Democratic County Chairmen of the State the name of relator as a candidate on the Democratic ticket for Governor at the primary election of said party to be held on the fourth Saturday in July, 1930.

The petition is long, and in so far as is necessary to a determination of the issues here involved, it, in substance, contains allegations of fact as to qualifications, and the like, which would entitle relator to be certified as a candidate for the Democratic nomination of the Party, unless the other allegations hereinafter referred to would render him ineligible to said office.

Relator further alleges that the Committee named and its officers and members have refused to certify relator's name as such candidate, and that they do not intend to, have declared and threatened that they will not at the meeting of said Committee, to be held on the second Monday in June, next hereafter, or otherwise, certify or direct their Chairman to certify relator's name as such candidate.

Relator alleges that the reason assigned by the Committee for their action is the impeachment by the Texas Senate of Relator on September 25, 1917. Relator does not bring into question or review the validity of the impeachment proceedings and judgment therein;

but in bar of said judgment and in release thereof, he alleges that at its regular session in 1925 the Legislature of Texas duly enacted a statute, in words and figures as follows:

"An Act granting to every person against whom any judgment of conviction has heretofore been rendered by the Senate of the State of Texas in any impeachment proceeding, a full and unconditional release of any and all acts and offenses of which any such person was so convicted under and by virtue of any such judgment, and to cancel and remit any and all punishment fixed or assessed by any such judgment of said Senate, including that of disqualification to hold any office of honor, trust or profit under the State of Texas, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That every person against whom any judgment of conviction has heretofore been rendered by the Senate of the State of Texas in any impeachment cases, shall be and is hereby granted a full and unconditional release of any and all acts and offenses of which he was so convicted by said Senate of the State of Texas, upon any charge or proceedings of impeachment.

"Section 2. That any and all penalties or punishment inflicted by or resulting from any such judgment heretofore rendered by the Senate of Texas, in any such impeachment case, including any disqualification to hold any office of honor, trust or profit under said State, shall be, and the same is hereby fully cancelled, remitted, released and discharged.

"Section 3. Any person coming within the purview of this Act may, should he so desire, apply to the Secretary of State for a copy of this Act and upon such application the Secretary of State shall prepare and deliver to the applicant a copy of this Act duly certified by him and shall make and preserve a record of such application and the delivery of such certified copy, which shall become a permanent record of his office; provided that such application or delivery of a certified copy shall not be necessary in order to render this Act effective, nor shall the failure of any person affected by it to make such application or receive such copy render this Act invalid or inoperative as to any person coming within the purview hereof.

"Section 4. The fact that the relief of persons from further operation of penalties and punishments inflicted under or by judgments in impeachment cases rendered by the Senate of the State of Texas is a Christian function to be exercised by the Legislature of Texas, and there being no law now in force granting the power

to give relief in such cases, creates an emergency and an imperative public necessity which authorizes the suspension of the constitutional rule requiring bills to be read on the three several days in each House, and said rule shall be and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

That said statute was duly approved by the Governor of Texas, and duly filed in the office of the Secretary of State at Austin on March 31, 1925, and shown as Chapter 184, pages 454-5, General Laws of the State of Texas, passed by the 39th Legislature at its regular session, 1925. Relator further alleges due compliance with said law in making application to and receiving from the Secretary of State a certified copy of said statute at named dates in the year 1926, and he alleges that the effect of this Act was to remove from relator any and all disqualifications to hold office under the State of Texas resulting from the impeachment proceedings and judgment aforesaid. He also set out in his petition the Act of the 40th Legislature, Regular Session, 1927, known as Chapter 242, page 360, which undertook to repeal the Amnesty Bill aforesaid in toto and alleged that the same was wholly ineffectual for that purpose, in so far as plaintiff's rights were concerned.

Other attacks were made by relator in his petition on certain statutes involved in primary election laws upon constitutional and other grounds, but in view of our holdings in this case it is unnecessary to set out or further refer to them.

Relator further alleged that but forty-six days would elapse between the date of the meeting of the Executive Committee, fixed by law, and the first primary election, and that the time was so short as to preclude the possibility, or reasonable probability, of having relator's rights litigated and determined in the time intervening, and that relator's candidacy would be prejudiced thereby. He further alleged that other parties, to the relator unknown, were threatening to file injunctive proceedings designed to delay and prevent the certification of relator's name.

In due course respondents duly filed their answer, wherein they pleaded: (a) To the jurisdiction of the court; (b) general demurrer; (c) special answer setting out the election of relator as Governor of Texas; his conviction by the Texas Senate on ten of the articles of impeachment on September 25, 1917, and removal of relator from the office of Governor of the State and declaring him disqualified

to hold any office of honor, trust or profit under the State of Texas. They set out the judgment of conviction as follows:

"State of Texas,

vs.

Jas. E. Ferguson.

"Whereas, the House of Representatives of the State of Texas did, on the 24th day of August, 1917, exhibit to the Senate of the State of Texas Articles of Impeachment against Jas. E. Ferguson, Governor of the State of Texas, and the said Senate, after a full hearing and an impartial trial, has by the votes of two-thirds of the members present, this day determined that the said Jas. E. Ferguson is guilty as charged in the 1st, 2nd, 6th, 7th, 11th, 12th, 14th, 16th, 17th and 19th of said Articles of Impeachment, said articles and the votes thereon being as follows, to-wit: (Omitted here);

"NOW, THEREFORE, it is adjudged by the Senate of the State of Texas sitting as a court of impeachment, at their chamber, in the City of Austin, that the said James E. Ferguson be and he is hereby removed from the office of Governor and be disqualified to hold any office of honor, trust or profit under the State of Texas. It is further ordered that a copy of this judgment be enrolled and certified by the President pro tem of this Senate as presiding officer, and the Secretary of the Senate, and that such certified copy be deposited in the office of the Secretary of State of the State of Texas, and be printed in the Senate Journal."

They alleged that this judgment was in full force and effect, and further pleaded that the Amnesty Act set out in full in relator's petition was invalid as being in contravention of the Constitution of the State, which they alleged did not vest in the Legislature power to grant pardons to one who had been impeached, removed from office and declared to be disqualified to hold any office of honor, trust or profit under this State. They further alleged that relator was ineligible to hold the office of Governor, and that the Committee was prohibited from certifying his name to the various County Chairmen to be placed on the primary ballot in such primary election. (d) They further alleged that the filing of the petition was premature, in that relator's application to the Executive Committee was filed on April 16, 1930, and without a hearing by the Committee or a request for a hearing in advance of the second Monday in June, 1930, the regular day fixed by law for the Executive Committee meeting, and that the Committee had not had an opportunity to consider said petition before the whole Committee, where a full dis-

cussion might be had, and for that reason they prayed that the petition be dismissed.

Both the petition and answer are duly verified, and set out the facts sufficiently to raise the issues hereinafter considered by us. The facts are undisputed.

After full oral arguments and the filing of elaborate briefs by each of the parties, the controversy resolves itself into four principal issues. These issues will not be taken up in the exact order in which they have been presented, but in their natural and logical sequence. They are as follows:

First. Whether or not this Court has jurisdiction to hear and determine this controversy and grant the relief sought by relator.

Second. Whether or not relator's petition was prematurely filed and should be dismissed for that reason.

Third. Whether or not the Act set out in relator's petition, purporting to grant full and unconditional pardon to relator, approved March 31, 1925, for brevity and convenience herein referred to as the Amnesty Bill, was a valid exercise of legislative power, and not in contravention of the State Constitution.

Fourth. If the Amnesty Bill is valid and constitutional, then what is the effect to be given the Act of March 31, 1927, purporting to repeal the Amnesty Act?

## I.

With reference to jurisdiction, the Supreme Court of this State, in the case of Love v. Wilcox et al., only last week, in a well considered opinion by Associate Justice Greenwood, held under similar jurisdictional facts that the Supreme Court did have jurisdiction. We have carefully examined and considered this opinion, and approve it, and therefore hold that we do have jurisdiction to hear and determine this controversy.

## II.

Respondents contend that relator's petition for mandamus has been prematurely filed, in that on April 16, 1930, relator filed his application with the State Democratic Executive Committee to have his name certified as a candidate for the nomination of Governor, and that such application was not accompanied by any request (and none subsequently made) that a hearing be held to pass upon such application prior to the date specified by law, viz.: the second Monday in June, 1930, and that the Committee had not had an opportunity to act upon such application, and had not considered same, but that relator, without making any request that his application be

considered, prior to the second Monday in June, 1930, as provided by law, filed his petition for a writ of mandamus to compel respondents to certify his name as a candidate for the office of Governor. Respondents in substance further allege that because of the importance to the existence, integrity and purity of the Democracy Party, and because they have not had an opportunity to consider relator's petition in a committee meeting (where opportunity for a full discussion might be had), relator's petition had been prematurely filed, and should be dismissed. Respondents had already in paragraph III of their answer set out in detail the facts relative to the impeachment of relator on September 25, 1917, together with copy of the judgment removing relator from the office of Governor, wherein they declared that relator is disqualified to hold any office of honor, trust or profit under the State of Texas; that said judgment is authorized by Section 4, Article XV, of the Constitution of this State, and further plead the validity of the judgment of impeachment; that the same was in full force and effect, and that relator was disqualified to hold any office of honor, trust or profit under this State, and that by the terms of Article 2927, R. S. 1925, relator was ineligible to hold the office of Governor, and that by the terms of Art. 2928, R. S. 1925, the State Executive Committee of the Democratic Party is prohibited from certifying the name of relator, he being disqualified and ineligible to hold office, as aforesaid.

Had respondents plead merely that relator's petition had been prematurely filed under the circumstances set out in paragraph IV of their answer above referred to, without giving them an opportunity to meet and pass upon the same in committee meeting, or without a request by relator for a hearing prior to the regular meeting, provided by law, of said Executive Committee, and a denial thereof by them, we would be inclined to hold relator's petition had been prematurely filed. When respondents' answer with reference to the premature filing of relator's petition is considered in connection with their other allegations above, wherein they allege the validity and the binding force of the impeachment of relator, and this disqualification, and the further fact that they are prohibited by law from certifying relator's name, and when further considered in connection with the other facts set out in relator's petition, the shortness of time intervening between the second Monday in June, 1930, and the date of the first primary, and other facts therein, and the public interest, we are of the opinion that respondents' answer, wherein all members thereof joined, when taken as a whole, is equiv-

alent or tantamount to a refusal to certify relator's name. The law does not require a useless thing. Respondents having set up in clear and emphatic language all of the facts, which from their standpoint rendered relator ineligible to hold any office of honor, trust or profit under the State, and having further alleged that they were prohibited by the terms of Art. 2928, R. S. 1925, to certify his name, it is to be assumed that in the exercise of their duty, enjoined by their interpretation of the law, they would of necessity be compelled to refuse to certify relator's name. We therefore overrule respondents' contention in this respect, and hold that the relator's petition, under the circumstances, was not prematurely filed.

### III.

We next take up the question of the constitutionality and validity of the Amnesty Bill. Learned counsel for each of the parties in their oral arguments and in their briefs, with commendable zeal and energy, have traced for us the history, legislation and judicial decisions relating to impeachment in the other States of the Union, in England, and in other countries. Their labors in this respect have been most thorough and painstaking, and we have been greatly interested therein. While recognizing fully the historic value of their researches and the helpful character of the information furnished, we are constrained to conclude that the correct solution of the problem confronting us is to be found in the Constitution of the State itself and in a fair interpretation and construction of its provisions.

We are told by counsel that this is a novel case; that it is unique. They admit their inability to point to any authoritative case directly in point on this question. They assert that there is no specific precedent to guide us, and that this is a case of first impression.

In our effort to correctly solve this problem we must, therefore, resort to the Constitution itself, and the well established rules of construction which have been from time to time laid down and followed by the Supreme Court and the Court of Criminal Appeals of this State, pertinent to this issue.

It is axiomatic that in this State "all political power is inherent in the people," and that "the faith of the people of Texas stands pledged to the preservation of a Republican form of government, and subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they think expedient." (Bill of Rights, Art. I, Sec. 2.)

The Constitution is the fundamental law of the State. Through it the people, in whom all power is vested, have expressed their

will and have delegated their powers and have fixed their limitations subject to the reservations set out in the Bill of Rights, and subject to the Constitution of the United States. The powers of the government as provided in that instrument are divided into three distinct departments, each of which is confided to a separate body of magistracy, to-wit, those which are legislative to one; those which are executive to another, and those which are judicial to another; and no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances therein expressly permitted. (Constitution, Art. II, Sec. 1.) "The object of construction, as applied to a written Constitution, is to give effect to the intent of the people in adopting it." "But this intent is to be found in the instrument itself." It is also a proper rule of construction that "the whole is to be examined with a view to arriving at the true intention of each part." (Cooley's Constitutional Limitations, 8th Ed., Vol. 1, pages 124, 125, 127.)

It is a cardinal rule in the interpretation of constitutions that words are presumed to have been employed in their natural and ordinary meaning, that the instrument must be construed as a whole, and that whatever the purpose and intention of the framers of the Constitution as is found in its purport, language, or tenor, that intent and purpose must be followed. In other words, whatever was the purpose and intent of the people in ordaining the Constitution, must be the purpose and intent to be carried out by all the agencies created under it and clothed with power, authority, or direction in executing any of its commands or behests.

In the interpretation of the powers of the Legislature, it was held by Brown, J., in Brown et al. v. City of Galveston, 97 Texas, 1, 75 S. W., 489 (page 492), that the language of Article II, Section 1, vested in the Legislature all legislative power which the people possessed, unless limited by some other provision of the Constitution, and that the legislative power of this State as used in that Article meant all of the power of the people which may properly be exercised in the formation of laws, against which there is no inhibition, express or implied, in the fundamental law.

In Lytle et al. v. Halff et al., 75 Texas, 128, 12 S. W., on page 611, Chief Justice Stayton, in referring to this Article, said:

"The declaration is that the executive, legislative and judicial departments shall exist,—this is the fiat of the people,—and neither one nor all of the departments so created can enlarge, restrict, or

destroy the powers of any one of these, except as the power to do so may be expressly given by the constitution."

See also Cooley's Constitutional Limitations, 8th Ed., Vol. 1, page 175. So that, as we understand the law, the Legislature is clothed by the Constitution of the State with all legislative power except where it is limited or prescribed by some other provision of the Constitution, expressly or by reasonable implication. With reference to implications, it is laid down by Cooley's Constitutional Limitations, 8th Ed., Vol. 1, page 139, that the doctrine of implication is further modified by another rule:

"That where the means for the exercise of a granted power are given, no other or different means can be implied, as being effectual."

And again:

"That when the Constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases."

In Brown v. City of Galveston, supra, the court quoted with approval the following from Cleburne v. Ry. Co., 66 Texas, 461:

"A power will be implied only when without its exercise an expressed duty or authority would be nugatory."

Other established principles will be referred to hereafter at appropriate places.

The Constitution, Article XV, Sections 1 to 4, provides as follows:

"1. The power of impeachment shall be vested in the House of Representatives.

"2. Impeachment of the Governor, Lieutenant Governor, Attorney General, Treasurer, Commissioner of the General Land Office, Comptroller, and the Judges of the Supreme Court, Court of Appeals and District Court shall be tried by the Senate.

"3. When the Senate is sitting as a Court of Impeachment the Senators shall be on oath, or affirmation impartially to try the party impeached, and no person, shall be convicted without the concurrence of two-thirds of the Senators present."

"4. Judgment in cases of impeachment shall extend only to removal from office, and disqualification from holding any office of honor, trust or profit under this State. A party convicted on impeachment shall also be subject to indictment, trial and punishment according to law.".

The validity of relator's impeachment on September 25, 1917, is not questioned. His impeachment was before the Supreme Court of this State in Ferguson v. Maddox et al., 114 Texas, 85, 263 S. W., 888, and its validity sustained. In his impeachment the judgment was that he be removed from office, and be disqualified from holding any office of honor, trust or profit under this State. By the adoption of the Amnesty Bill, approved March 31, 1925, the Legislature of the State undertook to absolve all persons against whom any judgment of conviction had been theretofore rendered by the Senate of Texas in any impeachment proceeding from such judgment and the effects and consequences thereof, and which, if said Act be valid and constitutional, would have had the effect of releasing and cancelling the judgment of impeachment against relator, as well as cancelling and releasing the disqualifications of such judgment against holding any office of honor, trust or profit under this State.

It is not contended that there is to be found in the Constitution any express authority to the Legislature to adopt the Act mentioned or to release relator from the disqualifications mentioned in Sec. 4 of Article XV, but relator's contention is that under the broad legislative powers with which the Legislature is clothed, it had the power to pass the Amnesty Bill. The provisions of Article XV, Sections 1 to 4, in substantially the same form, are to be found in every Constitution of the State, commencing with the original Constitution in 1845.

In Ferguson v. Maddox, supra, it was held that the provisions of Article XV relative to impeachment are self-executing; that the Senate sat as a court of original, exclusive, and final jurisdiction.

The only express provision of the Constitution with reference to pardons is set out in Article 4, Section 11, reading as follows:

"In all criminal cases, except treason and impeachment, he [the Governor] shall have power after conviction, to grant reprieves, commutations of punishment and pardons; and under such rules as the Legislature may prescribe, he shall have power to remit fines and forfeitures. With the advice and consent of the Senate, he may grant pardons in cases of treason, and to this end he may respite a sentence therefor, until the close of the succeeding session of the Legislature; provided, that in all cases of remissions of fines and forfeitures, or grants of reprieve, commutation of punishment or pardon, he shall file in the office of the Secretary of State his reasons therefor."

This provision likewise, in substantially the same form, is to be found in all of the Constitutions of Texas.

In Parks et al. v. West et al., 102 Texas, 11, 111 S. W., 726, the Supreme Court, speaking through Williams, J., held:

"It is a rule for the construction of constitutions, constantly applied, that where a power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others. 6 Am. & Eng. Ency. Law, 928, and cases cited.

"Undoubtedly the discretion granted as to locating school districts is broad, but it is not unlimited. By authorizing the creation of districts 'within all or any of the Counties' the constitution impliedly commands that they be not created otherwise."

This precise rule is followed in the following cases: Crabb et al. v. Celeste Independent School Dist., 105 Texas, 194, 146 S. W., 528, (Dibrell, J.); Aldridge et al. v. Hamlin et al., 184 S. W., 602; Burns v. Dilley County Line Independent School District et al., 295 S. W., 1091, (Com. App., Short, J.)

In Ex parte Massey, 49 Texas Crim., 60, 92 S. W., 1086, the Court of Criminal Appeals, through Presiding Judge Davidson, laid down the rule in these words:

"It is a well known rule, sanctioned by all legal authority, that where the constitution provides how a thing may or shall be done, such specification is a prohibition against its being done in any other manner. This is but the application of the familiar rule that the expression of one thing is the exclusion of any other, and therefore is decisive of legislative authority."

Again, in Holley v. State, 14 Tex. App., 505, the same court held:

"When the constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or to extend the penalty to other cases."

In the State of Texas v. Moore, 57 Texas, 307, 314, Judge Stayton laid down the rule in these words:

"It must be presumed that the constitution, in selecting the depository of a given power, unless it be otherwise expressed, intended that the depository should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power." (Page 314).

And again, (page 315):

"That the constitution might empower the legislature to withdraw power from the hands in which the constitution placed it, and to confer the same upon another officer or tribunal, cannot be ques-

tioned; but to enable the legislature to do so, the power must be given in express terms."

The present Supreme Court in Arnold v. Leonard et al., 114 Texas, 535, 273 S. W., 799, had before it an Act of the Legislature attempting to make rents and revenues from the wife's separate lands a part of her separate estate. Art. XVI, Sec. 15, of the Constitution in substance provides that all real property of the wife owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, shall be her separate property. The legislative Act undertook to enlarge upon this provision of the Constitution and to include other properties not made her separate property thereunder. In passing upon the validity and constitutionality of the legislative Act, the Court, speaking through Associate Justice Greenwood, held the legislative Act invalid as applying to rents and revenues from the wife's separate land making them a part of her separate estate. The Court there held in substance that it is the rule of construction of constitutions that when circumstances are specified under which any right is to be acquired, there is an *implied prohibition* against legislative power either to add to or withdraw from circumstances specified, and that under the Constitution, Art XVI, Section 15, providing that property acquired by the wife during coverture, by gift, devise or descent, becomes her separate property, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property. The Court further announced that the rule of *implied exclusion* is no more binding in construing statutes than in interpreting constitutions. The Court, among other things, said:

"We have no doubt that the people in adopting the Constitution in 1845, as in 1876, understood that it was intended to put the matter of the classes of property constituting the wife's separate estate beyond legislative control. Thereby both the wife and the husband were given constitutional guaranty of the status of all property derived by means of or through the wife. Our duty is plain to give effect to the people's will. Cooley's Constitutional Limitations (7th Ed.) p. 89. It is a rule of construction of Constitutions that ordinarily, when the circumstances are specified under which any right is to be acquired, there is an implied prohibition against the legislative power to either add to or withdraw from the circumstances specified. Koy v. Schneider, 110 Texas, 378, 218 S. W., 479, 221 S. W., 880; Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1012; Ex parte Vallandigham, 1 Wall., 252, 17 L. Ed. 589; 6 R. C. L.,

Sec. 43. Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property. The rule of implied exclusion is no more binding in construing statutes than in interpreting Constitutions. In Howard v. York, 20 Texas, 672, in an opinion of Judge Roberts, it is said that for the Legislature to preserve to the wife's separate property increase of land and slaves 'impliedly negatives the idea that the increase of any other property becomes separate property.' Had it been the purpose of the Constitution to empower the Legislature to add to the wife's separate property, it is hardly to be doubted that the power would have been conferred, when the framers of the Constitution were expressly authorizing the enactment of laws to more clearly define the rights of the wife in relation to both her separate property and community property."

In Dickson v. Strickland, Secretary of State, 114 Texas, 176, 265 S. W., 1012, the present Supreme Court, through Associate Justice Greenwood, answered certified questions in the controversy wherein an effort was made to prevent the name of Mrs. Miriam A. Ferguson, wife of relator, going upon the ballot as a candidate for Governor, for various reasons not necessary to enumerate. The Court held that where the Constitution declares qualifications for office, it is not within the power of the Legislature to change or add to these qualifications, unless the Constitution gives that power. In this holding they were considering an Act of the Legislature, Art. 3083-a, Acts 1895, p. 81, which undertook to enlarge upon the residential qualification of a candidate for Governor. The Court held that in so far as this Act related to officers, such as the Governor, whose qualifications had been particularly and carefully and definitely enumerated in the Constitution, it cannot be doubted that it was utterly void. Citing a number of authorities in support of this proposition, among other things the Court said:

"The qualifications of public officers, when defined by the Constitution, are as clearly beyond change by the Legislature as are the qualifications of electors when fixed by constitutional provision. It is the declared law, by both the Court of Criminal Appeals and the Supreme Court of this State, that it is beyond the power of the Legislature to add an additional qualification for an elector to those prescribed by the Constitution. Solon v. State, 54 Texas Cr. R.,

261, 114 S. W., 349; Koy v. Schneider, 110 Texas, 378, 218 S. W., 479, 221 S. W., 880."

In City of Denison v. Municipal Gas Co., 117 Texas, 281, 3 S. W., (2d) 794, the present Supreme Court, through Associate Justice Pierson, held that when the Constitution defines the duties of an agency of the Government, the Legislature is without authority to add to or take from those powers or duties or substantially alter them.

In State, ex rel. Attorney General v. Hatcher, State Treasurer, 115 Texas, 332, 281 S. W., 192, the Supreme Court through the Commission of Appeals held that neither the Legislature nor the courts can set aside a clear constitutional provision.

In Alvarado v. State, 83 Texas Crim., 181, 202 S. W., 322, the Court of Criminal Appeals, through Presiding Judge Davidson, held that when the Constitution provides and commands that a thing shall be done, the matter must be done as directed, and neither the legislature, executive nor the courts have the authority to set aside the mandates.

Applying the above rules, and principles, to the present case, we find that the Constitution of the State has in plain, intelligible language defined the circumstances under which the Governor may be impeached. It has provided the machinery and has laid down the procedure by which his impeachment may be accomplished. It has provided that the power of impeachment shall be vested in the House of Representatives. It has named the officers of the State subject to be tried for impeachment by the Senate, which includes the Governor. It has provided that when the Senate is sitting as a court of impeachment the Senators shall be on oath or affirmation impartially to try the party impeached, and that concurrence of two-thirds of the Senators present shall be necessary to conviction. It prescribes the judgment in case of impeachment, which shall extend only to removal from office and disqualification from holding any office of honor, trust or profit under this State, and further that the party convicted of impeachment shall also be subject to indictment, trial and punishment according to law. The Senate in the trial of impeachment cases is a court of original, exclusive and final jurisdiction, whose judgment of impeachment can only be called in question for lack of jurisdiction or excess of constitutional power. (Ferguson v. Maddox, supra).

The Senate under the Constitution has been selected as the depository of the power of impeachment, and this power under the rules

stated is an exclusive one, with which the Legislature could not interfere. There is no express or implied power to be found in the Constitution empowering the Legislature to nullify the plain, mandatory judgment in case of conviction of impeachment.

When looking to the intention of the convention adopting the Constitution, we find that provision is made for a pardon in criminal cases after conviction. (Art. IV, Sec. 11). In this Article *treason* and *impeachment* are expressly excepted from the general pardon power of the Chief Executive. With the advice and consent of the Senate, the Governor may grant pardons in cases of treason. Treason may be punished as a capital offense, while impeachment is punished only by removal from office and disqualification to hold any office of honor, trust or profit under this State. It is obvious, therefore, that the Convention had in mind the effect of impeachment, for it expressly referred to it, and expressly excepted it from the pardon power. The Convention well knew the penalties it had provided in judgments of conviction in cases of impeachment. It well knew that judgments of impeachment not only provided that the convicted officer be removed from office, but decreed that he should thereafter be disqualified to hold any office of honor, trust or profit under this State. It is reasonable to conclude that the Convention understood that but for the exception made as to *impeachment, impeachment* would have been included within the pardon power of the Governor, and by expressly excepting *impeachment* therefrom that it understood and intended to be understood as excluding it from the pardon power there and elsewhere. The Convention in excepting impeachment from the pardon power of the Governor, while at the same time providing the method of pardon in cases of treason, evidently intended that an unfaithful officer convicted of impeachment should not again be permitted to hold office in this State.

As said by Associate Justice Brown in Brown et al. v. City of Galveston, supra, and which is quite apropos here:

"It is not reasonable to conclude that the convention would have left so important a matter to be arrived at by implication from language used in reference to a different subject. * * * Our Constitution is distinguished for the particularity of its provisions, and the details into which it enters in reference to matters of government."

It is unreasonable, if not unbelievable, in our opinion, that the Convention, after providing for the disqualification of a convicted officer in impeachment to thereafter hold any office of honor, trust or profit under the State, and after excepting from the pardon power

granted to the Executive those convicted of impeachment, ever intended that the Legislature by mere implication could wholly abrogate and render nugatory the plain provisions of the Constitution providing for such disqualification. It is a matter of common knowledge that impeachment of Governors in this country, and particularly in this State, are rare. Impeachment is used only in extreme cases. As a rule the State is a long sufferer before resorting to this constitutional remedy. The House of Representatives first acts in the capacity of a grand jury, and it must, in effect, return the indictment, to-wit: the articles of impeachment. The Senate, sworn to impartially try the party impeached, then tries the case, and after this it requires the concurrence of two-thirds of the members to convict. The punishment provided extends only to removal from office and disqualification to thereafter hold office of honor, trust or profit under the State. Had it been the intention of the Convention to authorize the Legislature or any other department of the government to pardon one convicted under these plain constitutional provisions, it could have, and undoubtedly would have, so provided in plain unmistakable language.

The disqualifications to hold office of honor, trust or profit under the State have been fixed by the plain constitutional provisions named. These disqualifications are just as certainly binding when stated (as they are) in a negative way as the positive qualifications for the office of Governor of this State.

In Dickson v. Strickland, supra, the Supreme Court said that the qualifications for Governor could not be added to by the Legislature. If the Legislature cannot add to the qualifications, the same rule undoubtedly applies that they may not take away disqualifications provided by the Constitution. The principle is the same. The rule applies with equal force to each.

Again, referring to Article II, Section 1, in providing for the three distinct departments of government, to-wit: legislative, executive, and judicial, it is provided:

"And no person or collection of persons being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

As above pointed out, the Senate in the trial and conviction of relator acted as a court, and not as a part of the Legislature. These powers were given to it expressly by the Constitution. Its judgment of removal and disqualification was the judgment of a court. (Constitution, Art. XV, Sections 3 and 4; Ferguson v. Maddox, supra; Kilbourn v. Thompson, 103 U. S., 168, 26 L. Ed., 377; Beall v.

Beall, 8 Ga., 210, 228). By the plain provisions of Article II, Section 1, no other department could exercise any power properly attached to it, and no other power, without an express provision of the Constitution authorizing it, could render its judgment of disqualification nugatory.

Counsel for relator have argued with great earnestness that unless the Legislature had the power to pardon in case of impeachment, great hardship could or might be inflicted. The Constitution is the repository of the people's will. Its provisions are fixed as of the date of its adoption. These provisions are the same at all times thereafter. They are superior to all laws enacted thereunder. That many of the provisions of the Constitution are inconvenient and work hardships at times is well recognized. As citizens we might wish relief in many respects from its rigor, but as a court we must respect its mandates.

"That inconvenience may and will arise from an adherence to the Constitution may be conceded, but this affords no reason for construing away its provisions. It is not for the courts or Legislature to supply these defects. This is for the people who made that instrument. * * * If the law does not work well, the people can amend it, and the inconveniences can be borne long enough to await that process." (Keller v. State, 87 S. W., page 676.)

In this last opinion the Court, quoting from a New York case, further said:

"If the Legislature or the courts may take that office upon themselves, [to supply these defects] or if, under color of construction, or upon any other specious ground, they may depart from that which is declared, the people may well despair of ever being able to set any boundary to the powers of government. Written constitutions will be more than useless. Believing, as I do, that the success of free institutions depends upon a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for latitudinarian constructions which are resorted to for the purpose of acquiring power —some evil to be avoided or some good to be obtained by pushing the powers of government beyond their legitimate boundary. It is by yielding to such influences that Constitutions are gradually undermined and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it, and the inconveniences can be borne long enough to await that process. But if the Legislature or the courts undertake to cure defects by forced

and unnatural constructions, they inflict a wound upon the Constitution, which nothing can heal. One step taken by the Legislature or the judiciary in enlarging the powers of government opens the door for another, which will be sure to follow; and so the process goes on until all respect for the fundamental law is lost, and the powers of governments are just what those in authority please to call them."

In Ex parte Anderson, supra, Presiding Judge Davidson quoted with approval the following:

" 'A written constitution is in every instance a limitation upon the powers of government in the hands of its agents, for there never was a written republican constitution which delegated to functionaries all latent powers which lie dormant in every nation and are boundless in extent and incapable of definition.' Cooley (5th Ed.) p. 4, and notes; Hamilton v. St. Louis County Court, 15 Mo., 13; In re Gibson, 21 N. Y., 9; Sheppard v. Thomas, 26 Ark., 625; State v. Denny, 118 Ind., 382, 21 N. E., 252, 274, 4 L. R. A. 69 to 79, 91; People ex rel. Le Roy v. Hurlbut, 24 Mich., 107, 9 Am. Rep., 103."

And again:

"It was said 'that the Constitution is the basis on which the government rests, and authority for all law, and is the commission under which the executive and the judiciary act. It is permanent, and not influenced by the temper of the times. If the legislative act impinges its principles, the act must yield, and whenever it is brought before the court it must be declared void.' "

Irrespective of the rigors of the Constitution, if such there be in the present case, and irrespective of the stress of the times, of which we are reminded, it is the duty of the Court to declare the law as it is written, leaving it to the people themselves to make such changes as reason and circumstances may require.

If there were doubt in our minds as to the constitutionality of the Amnesty Bill, it would be our duty to resolve the doubt in favor of its validity. There is no doubt in our minds but that the Amnesty Bill violates the plain provisions of the Constitution, and is therefore invalid, and we so hold.

## IV.

Having held that the Amnesty Bill is invalid, it is unnecessary to consider the effect of the Act of March 31, 1927, which undertook to repeal the Amnesty Bill.

The writ of mandamus prayed for is denied.

*A. H. Britain,* Special Chief Justice.

Opinion delivered May 23, 1930.

## ON MOTION FOR REHEARING.

PER CURIAM: In his motion for rehearing one of relator's able counsel insists that in our main opinion we misconstrued our State Constitution. We have no doubt of the correctness of our interpretation. Indeed, as we understand it, our State Constitution, wherein it deals with impeachment, will bear no other construction than the one given it in our main opinion. The motion therefore will be overruled.

The provisions of our Constitution which deal with impeachment and with pardons *positively* exempt impeachment from pardon. Provision is made for impeachment by the Legislature. In Article 15 it is provided that the House of Representatives may prefer charges of impeachment, and the Senate, sitting as a court of impeachment, may try the charges and enter judgment thereon, and their judgment may extend to removal from office and disqualification from thereafter holding office. Article 4, Section 11, in part provides that:

"In all criminal cases, except treason and impeachment, he (the Governor) shall have power, after conviction, to grant reprieves, commutations of punishment, and pardons; and, under such rules as the legislature may prescribe, he shall have power to remit fines and forfeitures. With the advice and consent of the senate, he may grant pardons in cases of treason."

This Article thus empowers the Governor to pardon after conviction all criminal offenses except *impeachment* and *treason*, and in the same connection provides for pardon for treason with the advice and consent of the Senate. Exemption of pardon for impeachment was expressly retained. The subjects of impeachment and treason were thus expressly dealt with by the people in convention assembled, along with and in connection with the powers granted to the Legislative and Executive Departments of government over these particular subjects. Expressly stipulating the authority and powers these two departments of government may exercise over impeachment and over treason, and expressly excepting impeachment from pardon, the exclusion is conclusive on these departments.

Treason may be punished by death, imprisonment, or such other punishment as may be provided by law. Therefore, a possible and ultimate pardon was provided for it. The Constitution provided that the judgment for impeachment should extend only to removal from office and disqualification from holding office in Texas, and that any violation of the criminal laws of the State may be prose-

cuted and punished in the criminal courts as other offenses. Convictions under the criminal laws would be pardonable as other offenses after conviction, but impeachment with consequent removal from office and disqualification to hold office was specifically excepted from pardon. The purpose of impeachment was not primarily one of punishment, but a protection to the public, an established public policy fixed in the Constitution. This does not convict the State of being "most imperfect and deficient in its political morality and in that attribute of Deity whose judgments are always tempered with mercy."

That under the American system of government no pardon is provided in cases of impeachment is held to be the general rule. In 20 Ruling Case Law, Sec. 17, pp. 535, 536, the principle is announced in the following language:

"In this country, however, it is generally held that the pardoning power does not extend to the relief of defendants from judgments rendered in impeachment proceedings. This power is expressly excluded in the grant of power upon the subject of pardons in practically all of the constitutions, not excepting the United States constitution. The provision in our constitutions excepting cases of impeachment out of the power of the executive to pardon was evidently taken from the English statute, and is an improvement on it. The reason for the difference between the English and the American practice in this regard may be found in the difference between the punishment there and here. In England, the judgment on impeachments is not confined to mere removal from office, but extends to the whole punishment attached by law to the offense. The House of Lords, therefore, on a conviction, may, by its sentence, inflict capital punishment; or perpetual banishment; or forfeiture of goods and lands; or fine and ransom; or imprisonment, as well as removal from office, and incapacity to hold office, according to the nature and aggravation of the offense. As the judgment on a conviction in this country extends no farther than to a removal from office, and disqualification to hold office, there is not the same reason for its exercise after the conviction as there is in England."

See also Story on the Constitution, (5th ed.) Vol. 2, Secs. 1501, 1502.

Able counsel insist that a pardon for every offense must reside in one of the three departments of government, but in argument admit that the Constitution in other instances provides that no pardon shall be had.

Article 16, Section 4, provides that any one who assists *in any manner* in the fighting of a duel, or in arrangements therefor, shall not hold office in Texas.

Article 16, Section 5, provides that one who secures his appointment or election to an office by bribery shall never thereafter hold office in Texas.

Other provisions provide that members of Congress of the United States, that soldiers and sailors, and others, may not hold office in Texas.

The disqualification to hold office in Texas by one who has been impeached is in keeping with the governmental policy of this and the other States of the United States.

The motion is overruled.

Opinion delivered May 26, 1930.