**THOMPSON et al. v. ELMO INDEPENDENT SCHOOL DIST. (No. 131.)**

(Court of Civil Appeals of Texas. Waco. Jan. 8, 1925. Rehearing Denied Feb. 26, 1925.)

**1. Schools and school districts ⬤⇒55—Powers of trustees of independent districts strictly construed.**

Independent school districts being local public corporations and creatures of statute, trustees thereof are limited in exercise of powers to those expressly granted, those necessarily implied in or incident to powers grant-

ed and those indispensable to objects and purposes of body, and any reasonable doubt as to power will be resolved against it.

**2. Schools and school districts ⬤⇒63(4)—Attempted arrangement between bank and trustees of district to change character of deposit held under treasurer's bond held illegal and void.**

Attempted arrangement between bank and trustees of independent school district purporting to transform funds, held by former under its treasurer's bond as required by Rev. St. 1911, art. 2861, into simple, unsecured, noninterest-bearing deposit, such as would have been entitled to payment out of state guaranty fund, held illegal and void in view of articles 2771, 2772, 2851, 2882, relating to duties of treasurer as custodian of funds, and in view of general strict construction of trustees' powers.

**3. Schools and school districts ⬤⇒63(4)—Trustees of independent district held powerless to release treasurer's bond.**

Trustees of independent school district held powerless to make valid agreement transforming character of funds held by bank as treasurer into simple unsecured deposit thereby releasing principal and sureties on treasurer's bond.

**4. Banks and banking ⬤⇒15—Contention that funds were special deposit without merit where funds not segregated.**

Contention of school district that, by arrangement with bank, its funds were special deposit for purpose of retiring certain bonds, and therefore were payable out of guaranty fund, held without merit, where no money was in fact segregated and where in fact bank had not that much actual cash at time of attempted arrangement.

Appeal from District Court, Kaufman County; J. S. Woods, Special Judge.

Suit by Elmo Independent School District against J. W. Thompson and J. L. Chapman, Commissioner of Insurance and Banking in charge of First Guaranty State Bank of Elmo, for the purpose of liquidation, and others. From the judgment rendered, both plaintiff and the Commissioner appeal. Reversed and remanded.

W. A. Keeling, Atty. Gen., and Jno. W. Goodwin and Walace Hawkins, Asst. Attys. Gen., for appellants.

Bumpass & Wade, of Terrell, and W. P. Dumas, of Dallas, for appellee.

GALLAGHER, C. J. Elmo independent school district sued the First Guaranty State Bank of Elmo, which had been declared insolvent, and J. L. Chapman as commissioner of insurance and banking in charge of said bank for the purpose of liquidation, to establish a claim against the said bank and said commissioner in the sum of $4,860.39 as an unsecured and noninterest-bearing deposit in

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said bank to the credit of said district at the time said bank was closed and subject to payment out of the guaranty fund, and also as a special deposit in said bank for a special purpose, alleging that the same passed into the hands of said commissioner as such at said time. The district also sued said insolvent bank as principal and J. W. Thompson and J. L. Griffin as sureties on a depository bond given by them to said district as treasurer thereof for the scholastic year ending August 31, 1921, and asked in the event it failed to recover judgment establishing its claim against said bank and said commissioner, that it have judgment therefor with 4 per cent. interest from September 1, 1921, on said bond. The case was tried before the court. The judgment rendered, so far as necessary to recite for the purpose of this opinion, is as follows:

"The plaintiff's claim to the extent of $4,860.39 be and is hereby established against said bank and said commissioner of insurance and banking of the state of Texas as an unsecured and noninterest-bearing deposit in said bank to the credit of plaintiff at the time said bank was closed, and also as a special deposit in said bank for a special purpose as aforesaid, which passed into the hands of said commissioner at the time said bank was closed. It is ordered that the judgment be certified by the clerk of this court to said commissioner of insurance and banking, J. L. Chapman, and state banking board of the state of Texas, for observance.

"Further, it is ordered and adjudged that plaintiff take nothing by its suit against the defendants First Guaranty State Bank of Elmo, Tex., principal, and J. W. Thompson and J. L. Griffin, sureties, by reason of said depository bond."

The commissioner of insurance and banking, acting for said insolvent bank and for himself as such commissioner, has brought the case to this court for review on appeal. The school district has also appealed from the judgment against it in favor of said bank and its sureties on its said depository bond. By agreement of all the parties, both said appeals are presented together on the same transcript and statement of facts.

The First Guaranty State Bank of Elmo was duly selected as treasurer of the school fund of the Elmo independent school district for the scholastic year beginning September 1, 1920, and ending August 31, 1921. It gave bond as such with defendants J. W. Thompson and J. L. Griffin as sureties. Some time about September 1, 1921, Mr. Wheeler, the cashier of said bank, who it seems had the exclusive management of the same, notified the secretary of the school board that said bank did not desire to act as treasurer or depository of said school district any longer and was ready to give up the funds belonging thereto. The major portion of such funds belonged to a sinking fund for the retirement of certain school bonds of said district then outstanding. None of these bonds were due, but members of the school board had theretofore conferred with said cashier concerning the possibility of inducing the parties holding such bonds to surrender the same for payment. It seems that this matter was also in the minds of the parties at the time of the conversation between the cashier and the secretary of the school board above referred to. Said secretary testified concerning the transaction between him and said cashier as follows:

"Mr. Wheeler said: 'We can't pay any interest, but you can leave the money on deposit and I will act as agent to get up those bonds and pay them off,' and we left the money there for that purpose. He said the money was subject to our check; that if we wanted to check it out, the money was there for us. We told Mr. Wheeler that we wanted to locate the bonds and take the money and pay the bonds off. Mr. Wheeler stated positively that he would not pay any interest on the money; we never did receive any interest on it. * * * That agreement was that we were to leave our money on deposit without interest and Mr. Wheeler was to locate the holders of the bonds and pay them off for us with the money on deposit there. No bond was given by any one to protect this deposit there after September 1, 1921. Mr. Wheeler, in telling us that the bank did not wish to act as our depository any longer, stated the bank was in a weakened condition and that it probably wouldn't be able to run much longer, but that our money would be safe just the same, whether the bank kept going or not. He was merely acting as our agent to locate the bonds and pay them off; the money was to remain on deposit subject to our check any day after the last day of August that Mr. Calens (president of the board) and I signed a check for the full amount of the money; that was our understanding. * * * Mr. Wheeler said he would honor our check for the money. I reckon that is the same thing as offering us the money."

While the arrangement shown by the testimony above quoted was made between the cashier of the bank and the secretary of the school board alone, the president of the board and another member were informed of the arrangement during the day it was made and the whole matter was reported to a meeting of the school board at some subsequent date. No action was ever taken by the school board in the premises, but it seems that the members of the board at such meeting informally expressed approval of the arrangement.

The bank was declared insolvent and closed by the commissioner of insurance and banking October 27, 1921, and then and there taken charge of by him for the purpose of liquidation. No new depository had been selected by the district at that time, and no further action had been taken by either bank or school district, except some effort to locate said bonds and secure an offer of terms

upon which they would be surrendered for payment. The cashier did not testify, but he joined the president and secretary of the school board in an affidavit, which, by the agreement of the parties, was introduced in evidence as true and correct. Said affidavit, omitting formal parts, was as follows:

"Before me, the undersigned authority, on this day personally appeared L. W. Dumas and Ross Gallens, who being by me duly sworn, says that they are now and have been for more than twelve months president and secretary of the Elmo independent school district at Elmo, Tex.; that the latter part of September, 1921, Earl Wheeler, cashier and general manager of the First Guaranty State Bank of Elmo, Kaufman county, Tex., informed them that his bank would not and did not care to become the depository of the Elmo independent school district any longer, but that the school could leave its money in his bank as an ordinary deposit, that then and there they agreed to this arrangement and requested said Wheeler to get in touch with the owners and holders of some bonds that the school owed, and that Earl Wheeler stated to them he would try to locate the holders of said bonds and that he might buy them for the school at a discount; that since September 1, 1921, this fund has been subject to the school's check and that said school has not received any interest or promised any interest on said deposit since said date, and the reason that another bond was not required, the school board had agreed to pay off some bonds it owed to extent of some $4,000.00; that department of education mailed to the president of Elmo independent school district a blank depository bond for 1921 and 1922 to be filled out; that he took said bond to said bank (First Guaranty State Bank of Elmo), and said Wheeler informed us that his bank did not care to be and would not be depository any longer, and that the school's money was there subject to its check; thereupon the school board asked Wheeler to assist them in locating bonds outstanding against the school and that the school would permit the deposit to remain in the bank, and that as soon as the bonds were located they would take them up. Thereupon the school board's money remained in the bank under said agreement as an unsecured and noninterest-bearing deposit."

It further agreed that the school district had on deposit in said bank at the time it was closed and taken charge of by the commissioner the sum of $4,759.91, of which $4,095.59 was to the credit of the sinking fund of the district and the sum of $664.32 was to the credit of the maintenance or incidental fund of said district.

The evidence showed that on September 1, 1921, said bank had on hand in cash the sum of $1,972.71 only and that it had to its credit in other banks $3,381.27; that on October 27, 1921, when closed by the commissioner of insurance and banking, it had on hand in cash $2,355.21 and to its credit in other banks $7,365.98.

The commissioner of insurance and banking contends in his appeal herein that the board of trustees of the Elmo independent school district was not legally invested with authority or power to agree to discharge said bank as treasurer or depository of the school funds of said district, and to release it and its sureties from the obligation imposed by its bond as such and to agree that the school funds owed to the district by it should be considered and held by it as a general, unsecured, noninterest-bearing deposit. The extent of the powers which a municipal corporation may properly exercise has been clearly defined by our Supreme Court in the case of Foster v. City of Waco, 113 Tex. 352, 355, 356, 255 S. W. 1104. We quote from the opinion in that case as follows:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. 1 Dillon on Municipal Corporations (5th Ed.) § 237; 28 Cyc. p. 1533; 19 R. C. L. § 75; City of Brenham v. Brenham Water Co., 67 Texas, 542, 553, 554, 4 S. W. 143; Citizens' Bank v. City of Terrell, 78 Texas, 456, 14 S. W. 1003. * * *

"A municipal power will be implied only when without its exercise the express duty or authority would be rendered nugatory. Cleburne v. Gulf, etc., Ry. Co., 66 Texas, 457, 461, 1 S. W. 342."

[1] Independent school districts are local public corporations of the same general character but created for school purposes alone. They are the creatures of the statute, and the powers vested in their boards of trustees are subject to the same limitations. Royse Independent School Dist. v. Reinhardt (Tex. Civ. App.) 159 S. W. 1010, 1011. Our statutes nowhere authorize boards of trustees of independent districts to ever take personal possession of the school funds or any part thereof, nor to arrange for the deposit of such funds with any person or corporation except the duly selected and qualified treasurer or depository of the district. No personal bond is required of the members of the boards of trustees. Such a bond is required by law of every person or officer authorized to receive or hold possession of such funds. The tax collector of an independent school district is

required by law to give bond in double the estimated amount of school taxes coming annually into his hands, conditioned for the faithful discharge of his duties and payment to the treasurer of all funds coming into his hands by virtue of his office. R. S. art. 2861. The law further contemplates that the available school funds apportioned to the independent school district shall be paid over directly to the treasurer or depository thereof. R. S. arts. 2851 and 2882. The office of treasurer of independent school districts is created by article 2771 of the Revised Statutes. The duties of such treasurer and the conditions of the bond required to be given in qualifying as such are prescribed thereby. Said article as now in. force and as herein quoted was enacted by the Legislature as an amendment of the original article Gen. Laws 1917, p. 369, c. 160 (Vernon's Ann. Civ. St. Supp. 1918, art. 2771). The only changes made in the re-enactment of said article were additions thereto. We here quote said article in full and indicate the portions added by such amendment by italicizing the same:

"In an independent district of more than 150 scholastics, whether it be a city which has assumed control of the schools within its limits or a corporation for school purposes only, the treasurer of the school fund shall be that person or corporation who offers satisfactory bond and the best bid of interest on the average daily balances for the privilege of acting as such treasurer. The treasurer *when thus selected shall be required to serve until his successor shall have been duly selected and qualified, and he* shall be required to give bond in double the estimated amount of the receipts coming annually into his hands. Said bond shall be made payable to the president of the board and his successors in office, conditioned for the faithful discharge of the treasurer's duties and the payment of the funds received by him upon the draft of the president of the school board drawn upon order duly entered of the board of trustees. *Said bond shall be further conditioned that the treasurer shall safely keep and faithfully disburse all funds coming into his hands as treasurer, and shall faithfully pay over to his successor all balances remaining in his hands.* It shall be approved by the school board and the state department of education shall be notified of the treasurer by the president of the school board filing a copy of said bond in said department."

The additional provisions incorporated in said article make material changes therein in two respects: First, in requiring the treasurer so selected to serve until his successor shall have been duly selected and qualified; and, second, by requiring such treasurer to pay over to his successor all balances remaining in his hands. The validity of these provisions was sustained by the Court of Civil Appeals for the Sixth District in the case of American Surety Co. v. Tarbutton, 248 S. W. 435, in which case the Supreme Court refused a writ of error. We see by the terms of said article that the only authority given the board of trustees over such funds when in the hands of the duly selected and qualified treasurer is to order its president to draw drafts thereon. The next succeeding article (R. S. art. 2772) specifically provides that public school funds shall not be expended except ,for the purposes therein authorized. Clearly, the action of the school board in ordering its president to draw drafts on such funds. must be governed and limited by the provisions of said article. Not only does the law provide that every person authorized to receive or hold school funds shall give security therefor, but further provides that such security shall be by bond and the terms and conditions of such bonds. No authority is given by law to boards of trustees of independent school districts to release their treasurers from their legal and bonded responsibility for the school funds in their hands and substitute therefor the security afforded by the terms of the guaranty law to owners of unsecured, noninterest-bearing bank deposits, as provided by chapter 5 of title 14 of our Revised Statutes. Such powers as the board of trustees of independent districts have over the school funds belonging to such districts, and the manner in which such powers shall be exercised, are prescribed by law, and the manner of exercise so prescribed must be followed to the exclusion of all other methods. Foster v. City of Waco, supra, page 354 (255 S. W. 1104).

The conclusion so reached is in accord with the holding of the Court of Civil Appeals for the Eighth District in the case of Chapman, Commissioner, v. Eastland County, 260 S. W. 889. That case, however, involved issues of fact and of law not found in this case. The bank in that case was the duly qualified depository of Eastland county. Subsequent to the approval of its bond as such, several of the sureties thereon suffered heavy financial losses, and the commissioners' court of that county required such depository to give a new bond. Said bank as such depository did not give a new bond, but specifically. agreed with said court in writing that the funds in its hands as such depository should be placed in a general deposit, unsecured and noninterest-bearing, until a sufficient depository bond was given. Said bank not only failed to give such bond, but shortly thereafter it closed its doors, and the commissioner of insurance and banking took charge of the same for purposes of liquidation. Eastland county sought in that case to establish a claim for its said funds against said bank and said commissioner of insurance and banking as an unsecured, noninterest-bearing deposit, entitled to payment out of the guaranty fund of the state. The

district court rendered judgment so establishing said claim, but the Court of Civil Appeals reversed such action and rendered judgment against the county and in favor of the commissioner on that issue. The statutes regulating county depositories confer much broader authority upon the commissioners' court with respect to the deposit of the county funds than is conferred on boards of trustees of independent school districts with reference to funds belonging to them. R. S. chapter 2, title 44. Eastland county, during the time the functions of said bank as county depository were suspended for failure to give the required new bond, deposited under said agreement certain county funds never before in the hands of said bank in the sum of $85,557.83. The county sought to establish said amount as a claim against said commissioner, payable out of said guaranty fund under certain provisions of said chapter and title not necessary to here set out, because no similar issue is raised by the facts in this case, nor does the law with reference to the treasurers of school funds of independent districts contain any similar provisions. The Supreme Court first refused a writ of error in said case, but on rehearing granted such writ. The notation on the application docket of said court shows that the writ was granted on said issue.

[2, 3] The attempted arrangement by which the funds held by the First Guaranty State Bank of Elmo in its capacity as treasurer of Elmo independent school district were to be considered as transformed into a simple, unsecured, noninterest-bearing deposit, such as would have been entitled to payment out of the state guaranty fund, was illegal and void because wholly beyond the power of the board of trustees of said district to make or agree to, and wholly insufficient to change the character of such deposit or the terms under which it was held by such bank.

[4] When money is placed in a bank as a special deposit, the identical money is expected to be kept and redelivered or held according to the agreed terms of the deposit. No money was segregated and held by the bank as such for the purpose of retiring bonds of the school district. In fact, the bank from September 1st until it was closed, as far as shown by the evidence, never had in its vaults actual cash sufficient to satisfy its obligation to the school district. By the attempted arrangement the moneys due the district were to be considered held by the bank as a general unsecured, noninterest-bearing deposit. Had the attempted agreement effected such change and given said money such status, the relation of debtor and creditor would have existed between the bank and the school district. The evidence in this case does not raise the issue of a spe-cial deposit. Duncan v. Magette, 25 Tex. 245, 248; Baker v. Kennedy, 53 Tex. 200, 205.

The judgment in favor of the sureties on the bank's bond as treasurer of the school fund of said independent district was evidently rendered on the theory that the attempted arrangement between the bank and the district released them from liability. The record is not in such condition as to justify the rendering of judgment by this court. There is evidence tending to show that the school district may be entitled to receive certain dividends as a general creditor of said bank. The bond introduced in evidence does not show a promise to pay any interest on the school funds belonging to the district and deposited in said bank, the amount of interest to be paid being left blank. Upon another trial the rights of the parties can be better determined and enforced by remanding the case in its entirety.

The judgment of the district court is reversed and the cause remanded for another trial.