

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann    AUSTIN 11, TEXAS
~~XXXXXXXXXXXXXXX~~
~~WILL WILSON~~
**ATTORNEY GENERAL**

Hon. O. E. Gerron        Opinion No. O-2231
County Attorney          Re: The authority of an independent
Ector County             school district to borrow money for the
Odessa, Texas            erection of a football stadium beyond
                         the current available funds of the dis-
Dear Sir:                trict.

Your request for opinion of April 15, 1940, has been received and carefully considered by this department. We quote from your letter of request as follows:

"I wish an opinion as to the legality of the following loan made by theFirst National Bank, Odessa, Texas, to the Ector County Independent School District for the expansion of their football stadium and field:

## "STATEMENT OF FACTS

"A warrant signed by the president and secretary of the Board of Trustees of the Ector County Independent School District and countersigned by the Superintendent of the school to the amount of eighteen thousand dollars ($18,000) made payable to the First National Bank of Odessa and secured by current taxes to the amount of two hundred and sixty four thousand dollars($264,000) delinquent taxes to the amount of twelve thousand dollars ($12,000) and one half of the net gate receipts of all the ball games played by the Odessa High School football team during the duration of the loan. The agreement between the bank officials and the school officials was as follows:

"' That the First National Bank would make the loan of eighteen thousand dollars ($18,000) in the above mentioned warrant and that although the loan was secured by current and delinquent taxes, the bank was to permit the loan to be repaid out of net gate receipts, the amount yearly to vary according to gate receipts for the duration of the loan not to exceed three years. The entire loan, principal and interest was made for the school fiscal year beginning September 1, 1939 to August 31, 1940, at which time two thousand dollars ($200.00) of the principal will have been paid and interest in full will have been paid. On September 1, 1940, a new warrant will be issued to the First National Bank of Odessa by the Ector County Independent School District securing the principal of sixteen

thousand dollars ($16,000) with current taxes for the year 1940-41, delinquent taxes and one half of the net gate receipts of that year and so on until said loan is paid, principal and interest in full. The bank is permitting the school district to pay the loan from gate receipts although it is secured by their school taxes. However, the Board of Trustees has agreed to pay the loan from taxes should the gate receipts fail. The loan was made September 9, 1939.'"

Article 2827, Vernon's Annotated Texas Civil Statutes, reads in part as follows:

"The public free school funds shall not be expended except for the following purposes:

". . . .

"Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purpose enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, . . . ."

Article 2749, Vernon's Annotated Texas Civil Statutes, contains the following language.

". . . . provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

The Supreme Court of Texas in the case of Collier vs. Peacock, 54 SW 1027, held that a Board of Trustees is not authorized to execute a teacher's contract which would cause a deficiency debt against the school fund of a district for any particular year. The same doctrine has been extended and applied not only to teachers' contracts but to other obligations, such as the purchase of supplies, equipment, and permanent improvements to the school property.

In the case of Templeman Common School District v. R.C. Head Company, 101 SW 2d 352, two warrants were issued in payment for septic toilets, said warrants being dated February 22, 1933, due February 22, 1934, and April 1, 1934. These were renewal warrants and there was no showing that the district had any available funds on hand for the year for which the purchase was

made.  The court in holding that recovery could not be had and said warrants stated:

>"While the loan refused in said statute (2749) refers specifically to a deficiency created in the employment of teachers, it has been held that it applies with equal force to debts incurred in the purchase of equipment.  In this connection, the Court of Civil Appeals in Stevenson vs. Union Feeding Company, 62 SW 128, 129, in referring to the holding of the Supreme Court in the case of Collier vs. Peacock, supra, said:

>>"'It is held that a warrant for teacher's salary in excess of the sum apportioned to the district for the year can not be made a charge upon the funds of a subsequent year.  Article 3959 (now Article 2749) was construed as a limitation upon the powers of the trustee to contract any debt which would cause a deficiency in the school fund of the district.  While the article applies alone to contracts for teachers salaries, we think the construction based upon it by the Supreme Court applies with equal force to the articles controlling the purchase of school furniture.'"

This same doctrine has been applied to independent school districts.  Trustees of Crosby Independent School District vs. West Disinfectant Company, 121 SW 2nd 661; First National Bank vs. Murcheson Independent School District, 114 SW 2nd 382.  In the last cited case, the suit was upon warrant accruing one, two and three years after date, bearing six per cent interest, payable out of the local maintenance fund for furniture or money advanced to purchase furniture.  The court stated:

>"Nor were there, for the particular years over and above the amounts necessary to conduct the school any available fund out of these these debts could be paid."

We quote from the case of Harlingen Independent School District vs. B. H. Page & Bros., (Comm. of App. 1932) 48 SW 2d 983, as follows:

>"From the above it is evident that the powers of the school board to expend the funds of the district are at all times limited to an available fund, and to the particular thing prescribed by the statute.  The board never has any authority to expend funds that are not available."

Opinion No. O-1387 of this department holds that an independent school district may use any surplus fund in its local maintenance fund for the purpose of erecting a school building, and may issue its evidence of indebtedness in contemplation of current revenue; but whatever the form of said evidence of

indebtedness the board of trustees is not authorized to create a deficiency debt against said fund for future years, and that the person advancing such money must look solely to the surplus funds accumulated for the year said obligation was created and not to the revenue of subsequent years, the time for payment not being controlling. We enclose herewith a copy of opinion No. O-1387 of this department.

Article 2802e-1, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Section 1. All independent school districts, and all cities which have assumed the control of the public schools situated therein, shall have power to build or purchase buildings and grounds located within or without the district or city, for the purpose of constructing gymnasia, stadia, or other recreational facilities, and to mortgage and encumber the same, and the income, tolls, fees, rents, and other revenues therefrom, and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds to secure the payment of funds to purchase or to construct, or to purchase and construct the same, including the purchase of equipment and appliances for use therein, and as additional security therefor by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereof a franchise to operate said properties so purchased for a term of not more than ten (10) years after such purchase. No such obligation shall ever be a debt of any such school district or city, but solely a charge upon the property so encumbered, and shall never be reckoned in determining the power of any such school district or city, to issue bonds for any other purpose authorized by law; provided that no election for the issuance of the bonds herein authorized shall be necessary, but the same may be authorized by a majority vote of the board of trustees of such independent school district or the governing body of such city.

"Sec. 2. Projects financed in accordance with this law are hereby declared to be self-liquidating in character and supported by charges other than taxation.

"Sec. 3. Such bonds shall be payable from the net revenues of the project together with all future extensions or additions thereto or replacements thereof, and the governing body of such such school district, or city, shall provide in the ordinance or resolution authorizing the bonds, that the cost of maintaining and operating the project shall be a first charge against such revenue, the maintenance and operating expenses to include only such

Hon. O. E. Gerron, page 5 (O-2231)

items as are set forth in said ordinance or resolution. After the payment of such maintenance and operating expenses a sufficient amount of the revenues remaining shall be set aside in a fund known as the Gymnasium or Stadium Bond Interest and Redemption Fund to provide for the payment of principal and interest upon such bonds plus a reasonable amount as a margin for safety. Such fund shall be used for no other purpose than to pay the principal of and interest on said bonds. Any revenues remaining after making the payments hereinabove provided for may be used for any lawful purpose.

"Sec. 4. Every bond issued or executed under this law shall contain the following clause:

"'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.'

"Such bonds shall be presented to the Attorney General for his approval of other school bonds and in such cases the bonds shall be registered by the State Comptroller as in the case of other school bonds.

"Sec. 5. No bonds authorized to be issued or executed under this Act, shall be issued or executed after the expiration of two (2) years from the effective date of this Act.

"Sec. 6. No land upon which is situated any of the school improvements other than as described herein shall ever be subject to the payment of any indebtedness created hereunder, nor shall any encumbrance ever be executed thereon.

"Sec. 7. That all acts performed, proceedingd had and contracts executed by school districts to which this Act is applicable, and by the governing bodies thereof, which acts, proceedings and contracts were unauthorized by law at the time of their performance or execution, but which would have been authorized under the terms of this Act had the same been in force at such time, are hereby validated, ratified, approved and confirmed in all respects, as fully as though they had been duly and legally performed, had and executed in the first instance."

Article 2802e-1 became effective March 25, 1939, and only provides for the issuance of bonds in the manner and for the purposes stated therein. Any project financed in accordance with Article 2802e-1, supra, is declared by the statute "to be self-liquidating in character and supported by charges other than taxation." The obligations created in financing any of the

above mentioned projects are to be evidenced "by the issuance of bonds to secure the payment of funds to purchase or to construct or to purchase and construct the same, including the purchase of equipment and appliances for use therein." None of the above mentioned obligations shall ever be a debt of any city or school district, but solely a charge upon the property encumbered.

Article 2827, supra, prescribes the general powers of boards and officers over funds belonging to school districts, and the manner in which those powers shall be exercised. The course prescribed by law must be followed to the exclusion of all other methods and any authority given to boards and officers to draw on school funds is governed and limited by the provisions of the general statute. Thompson vs. Elmo Independent School District, 269 SW 868; Texas Juris., Vol. 37, page 968.

We quote from Texas Jurisprudence, Vol. 37, page 970, as follows:

"Trustees are authorized to expend fund derived from local sources, and the surplus from the state and county available school funds, for any and all the purposes enumerated by law, and for such other purposes as, in the discretion of the board, may be reasonably necessary in the maintenance of the schools. The powers granted are sufficiently broad to authorize the appropriation of surplus funds to the construction of living quarters for teachers. The powers of the trustees are also sufficiently broad to authorize the expenditure of local funds for the establishment of a health department and its maintenance as a part of the school system, and for the employment of an attorney to represent the trustees in legal proceedings respecting school affairs.

"The board is authorized to use public funds to pay premiums upon insurance policies issued to cover every school building in the State, the title to which is vested either in the State, county or district."

Under the facts as stated (paragraph 2 of the statement of facts) apparently it is contemplated by the contracting parties that the note would not be paid from the revenues of current school years, but only a portion thereof would be so paid and the balance out of future revenues. As above stated, it is clear that the trustees of school districts are authorized to expend funds derived from local sources and the surplus in the state and county available school funds for any and all purposes enumerated by law and for such other purposes as, in the discretion of the board, may be reasonably necessary in the maintenance of the schools. Also, the board of trustees is

authorized and given the power to build or purchase building and grounds located within or without the district for the purpose of constructing gymnasia, stadia, or other recreational facilities, and to mortgage and encumber the same, and the income, tolls, fees, rents, and other revenues therefrom, and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds to secure the payment of said fund, under Article 2802e-1.

As shown by the statement of facts in your inquiry the school district has not complied with Article 2802e-1 in that no bonds have been issued in accordance with the provisions of said statute. Neither is the above mentioned contract authorized by Article 2827, supra.

In view of the foregoing, you are respectfully advised that it is the opinion of this department that an independent school district has no authority to pledge or expend funds of the district that are not available. And that the Board of Trustees is not authorized to create a deficiency debt against School's Local Maintenance Fund. You are further advised that it is the opinion of this department that the loan obtained by the district was not such a loan as the district was authorized to negotiate, and that the above described agreement is invalid as it attempts to pledge future tax revenues of the school district and that no bonds have been issued in compliance with Article 2802e-1.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams, Assistant

APPROVED: JUN 12, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

(This opinion considered and approved in limited conference)

AW:AW:wb