THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS



GROVER SELLERS
~~XXXXXXXXXXXXXXXXXX~~ PIERD
ATTORNEY GENERAL.

Hon. W. J. Edwards
County Attorney
Victoria County
Victoria, Texas

Dear Sir:

Opinion No. O-7183
Re: Whether an independent school
district is authorized to finance
and conduct a community recrea-
tional center

Your request for opinion has been received and carefully considered by this department. We quote from your request as follows:

"In behalf of the Victoria Independent School District, I request an opinion upon the following:

"May an independent school district conduct and finance, out of a surplus remaining in the local maintenance funds derived from local maintenance taxes, a community recreational center?

"The recreational center contemplated would involve taking over the recreation and assembly building formerly used by the USO, on a lease basis for a long term of years at a nominal rent. Money would be expended for the employment of a full time director, and also physical education teachers and play ground directors on a part time basis. The primary purpose of the project would be to combat juvenile delinquency by a program of physical education and supervised play.

"No bond issue is contemplated, and the provisions of Article 2802E-1 of the Civil Statutes would not apply."

Powers of boards and officers over funds belonging to the school districts, and the manner in which those powers shall be exercised, are prescribed by statute, and the course prescribed by law must follow to the exclusion of other methods. 37 Tex. Jurisprudence, p. 968; Thompson v. Elmo Ind. School Dist. 269 S.W. 868 and Dodson v. Jones, 190 S.W. 253.

Article 2784e, Vernon's Annotated Texas Civil Statutes, sets forth the purposes for which the trustees of a school district may levy taxes.

Article 2827, Vernon's Annotated Texas Civil Statutes, sets forth the purposes for which school funds may be expended. Sections 1 and 2 of Article 2827, reads as follows:

"The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become availavle; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"2. Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superinten- dent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein. Acts 1905, p. 263; Acts 1919, p. 189."

The case of Madeley, et al v. Trustees of Conroe Independent School District, et al, 130 S.W. (2) 929 (writ of error dismissed, judgment correct) held that the local tax levied and collected by the trustees of an independent school district for the maintenance of the schools could only be used for the purposes of maintenance "to the extent needed for that purpose." The court in its opinion made the following statement concerning the use of surplus moneys in the maintenance fund:

". . . What shall the Trustees do with this surplus? It cannot be expended in the support and maintenance of the public free schools, for it is not needed for that purpose; it cannot be diverted from public free school purposes, for under the Constitution it was collected for that purpose. It cannot be returned to the tax payers.

"Its allocation to the maintenance fund was by legislative edict for the purpose of supporting and maintaining the public free school. When that purpose has been effectuated, the fund is no longer subject to the control of the statutes, for the purpose of the statutes has been fully effectuated. If and when the statutes cease to control the fund, then it becomes a constitutional fund, and may be used by the trustees for the constitutional purposes; one of the constitutional purposes is 'the erection and equipment of school buildings' within the district. What we have said is in full recognition of the legal proposition that the fund collected for the support and maintenance of the public free schools, to the extent that it is needed for that purpose, cannot be diverted to any other purpose.

"The following illustration is in point on our holding: Where a district has issued bonds and voted a tax to retire them, what becomes of the surplus of the tax when the bonds are retired? Since it is not reasonable that the exact amount of the bonds will be collected, on every bond issue the trustees will have in their hands a surplus. Again, a tax payer permits his tax to become delinquent until after the bonds are retired; when sued, can he defend on the ground that the bonds for which the tax against his property was levied have been paid off? When the delinquent tax is collected, how shall it be expended? These questions find their answers in Sec. 3 of Art. 7 of the Constitution; where the

bonds have been paid off the statutes regulating the expenditures of the funds for their payment cease to control the power of the trustees in the expenditure of the surplus, and its expenditure rests in the discretion of the trustees, under Sec. 3 of Art. 7 of the Constitution."

Article VII, Section 3 of our State Constitution reads as follows:

"One-fourth of the revenue derived from the State occupation taxes and poll tax of one dollar on every inhabitant of the State, between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools; and in addition thereto, there shall be levied and collected an annual ad valorem State tax of such an amount not to exceed thirty-five cents on the one hundred ($100.00) dollars valuation, as with the available school fund arising from all other sources, will be sufficient to maintain and support the public schools of this state for a period of not less than six months in each year, and it shall be the duty of the State Board of Education to set aside a sufficient amount out of the said tax to provide free text books for the use of children attending the public free schools of this State; provided, however, that should the limit of taxation herein named be insufficient the deficit may be met by appropriation from the general funds of the State and the Legislature may also provide for the formation of school district(s) by general laws; and all such school districts may embrace parts of two or more counties, and the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such districts, whether such districts are (are) composed of territory wholly within a county or in parts of two or more counties. And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free

schools, and for the erection and equipment
of school buildings,thereon; provided that a
majority of the qualified taxpaying voters of
the district voting at an election to be held
for that purpose, shall vote such tax not to
exceed in any one year one ($1.00) dollar on
the one hundred dollars valuation of the prop-
erty subject to taxation in such district, but
the limitation upon the amount of school dis-
trict tax herein authorized shall not apply to
incorporated cities or towns constituting sep-
arate and independent school districts, nor to
independent or common school districts created
general or special law. (Sec. 3, Art. 7,
adopted election November 2, 1926; proclamation
January 20, 1927)."

Under the authorities above quoted, it seems to us to be
clear that school money may only be expended for school purposes. The
Community recreational center as outlined in your letter contemplates
the use of school funds for purposes incidentally beneficial to the
schools, but not exclusively school purposes. We must, therefore,
answer your question in this respect in the negative. However, we know
of no legal reason why the Board of School Trustees of the Victoria
Independent School District may not establish such a recreational cen-
ter and to conduct the same as a part of its educational program, as
it does any other school activity, provided the privileges and advan-
tages offered by the center are limited·to those who are legally en-
titled to attend school in the district.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s Wm. J. Fanning

Wm. J. Fanning
Assistant

APPROVED APR 17, 1946
GROVER SELLERS
ATTORNEY GENERAL OF TEXAS

WJF:BT:egw

APPROVED Opinion Committee
By BWB Chairman